**FARMERS GRAIN COOPERATIVE and State Insurance Fund, Plaintiffs,**

**v.**

**Donald Glenn MASON and the Industrial Commission of Utah, Defendants.**

**No. 15050.**

Supreme Court of Utah.

Jan. 21, 1980.

---

James R. Black of Rawlings, Roberts & Black, Salt Lake City, for plaintiffs.

Robert L. Shaughnessy, Asst. Atty. Gen., Robert B. Hansen, Atty. Gen., Salt Lake City, for defendants.

HALL, Justice:

Before us for review is an order of the Industrial Commission of Utah (hereinafter "Commission"), awarding workmen's compensation benefits to Donald Glenn Mason (hereinafter "defendant") for injuries sustained in an alleged accident while employed by Farmers Grain Cooperative (hereinafter "plaintiff").

The essential facts of the matter are not in dispute. At the time of the occurrence of those incidents giving rise to his claim, defendant was employed by plaintiff as a truck driver. On May 19, 1975, defendant was in Preston, Idaho, delivering a load of whey contained in 100-pound bags. As defendant was unloading the bags, he gradually began to feel pain in the area of the lower back. The discomfort became such that he enlisted the assistance of a co-worker in order to complete the unloading. On July 16th of the same year, defendant was engaged in a similar unloading operation, when the pain in his back again gradually arose. This time, the discomfort did not subside when work ceased, but spread downward into the upper portion of his right leg. On or about August 4, defendant ceased working and in the latter part of August, 1975, underwent surgery on his lower back.

The incidents of May 19 and July 16, 1975, were not the first cases of spinal difficulty in defendant's medical history. He had been involved, in April of 1972, in a trucking accident, which occurred in the course of his employment with Ned Kofford Trucking. The accident caused injury to his head, neck, and lower back, and necessitated ongoing therapeutic treatment. Two years later, in March of 1974, defendant was injured while working for IML Freight, a heavy load slipping from a forklift and transferring its weight onto his back. While the injury caused considerable distress, it necessitated no additional therapy or treatment. In addition to the two prior incidents of back injury, defendant suffers from scoliosis of the spine, a condition which twists and weakens the spinal column, and he also suffers from a condition known as spondylolysis, the onset of which, like the scoliosis, predated the 1975 incidents.

Following the occurrences in 1975, defendant filed claims against plaintiff, and also against the two employers for whom he was working at the time of his two prior injuries, asking benefits for the period of his convalescence. The matters were consolidated for hearing, at the conclusion of which the entire case was referred to a medical panel. The panel's conclusions may be outlined as follows. With regard to the first injury (occurring in 1972), it was concluded that the surgery undergone by defendant in 1975 was not a direct result of such injury, that nonetheless defendant suffered a 5 percent loss of body function, and was rendered in need of ongoing treatment. With regard to the second injury, the panel concluded that, prior to the injury, defendant had incurred, both from the prior action and from the appearance, in the interim, of the spondylolysis condition, a 14 percent loss of body function, that the 1974 injury did not contribute to further disability and had no relationship to the subsequent surgery, nor did it require any long-term therapy as had the previous injury. With regard to the injury claimed to have resulted from the two occurrences in 1975, the panel found that such occurrences aggravated spinal conditions which predated the injuries therein claimed, caused an additional 15 percent loss of body function, directly resulted in the need for subsequent surgery on defendant's back, rendered defendant totally disabled for a period of seven and one-half months, and necessitated ongoing

therapy, together with a possible supplementary operation in the future.

Plaintiff objected to the report of the panel in that it failed to indicate any specific incident giving rise to defendant's claim. Hearing on this objection was held, at which time Dr. Wallace E. Hess, chairman of the panel, appeared and further explained that defendant's back was basically unstable prior to May of 1975, that he was therefore more susceptible to injury; that the increased injuries would have occurred with or without trauma, on or off the job, and from ordinary activities; and that he would have developed back problems over a period of time in his work regardless of any trauma. The objection was nevertheless denied and the Commission thereafter entered its order granting defendant's claim. Plaintiff timely filed a Motion for Review, which was also denied.

Defendant's claim for compensation is dependent upon the provisions of U.C.A., 1953, 35–1–45 that "Every employee . . . who is *injured* . . . *by accident* arising out of or in the course of his employment . . . shall be paid, such compensation." (Emphasis added.) Plaintiff contends that the events of 1975 did not constitute an "accident" within the meaning of the statute, and that the award of compensation was therefore improper. Hence, the issue presented is whether the aggravation of a prior-existing disability by the performance of the usual and customary work one is hired to do, without the intervention of any unusual event or trauma, is compensable as an "accident."

This Court has addressed the question presented on previous occasions, the most recent of which was in *The Church of Jesus Christ of Latter-Day Saints v. Industrial Commission*.[1] In that case we held the evidence was insufficient to establish that an accident had arisen out of or in the course of employment where a janitor who suddenly experienced pain in his lower back while engaged in his typical work routine and who was later found to have a herniated disc. In so concluding, the case of *Redman Warehousing Corp. v. Industrial Commission*[2] was relied upon which stands for the proposition that compensability is dependent, not upon a gradual development because of the inevitable deterioration in general of the human body, but, rather, upon evidence of an on the job, unusual event, or accident.[3]

The case of *Continental Baking Co., et al. v. Industrial Commission*[4] interpreted the statutory language in question in the following manner:

. . . To render an injury accidental within the Compensation Law does not require that the strain be such that other men would not attempt it, or would anticipate probable injury therefrom. It simply means that the effort exerted, considering the position in which the workman was put by the work being done at the instant of the injury, was such that an injury, unanticipated and unforeseen, resulted to the workman. And, when there appears a direct connection between the personal injury as a result, and some happening in the employment as a proximate cause, an injury as the result of an accident in employment is shown, and the right to compensation is fixed.

In the instant case, the medical evidence reveals that defendant was not in good health prior to the incidents in question and that he in fact suffered from serious back ailments. The evidence further reveals that the type of work activity engaged in by the defendant (that of unloading heavy cargo) was not unusual or unexpected. The work was typical of that of a truck driver and comparable to the work he had followed for a number of years. Further, the aggravation of his physical condition gradu-

1. Utah, 590 P.2d 328 (1979).

2. 22 Utah 2d 398, 454 P.2d 283 (1969).

3. Relying upon *Pintar v. Industrial Commission*, 14 Utah 2d 276, 382 P.2d 414 (1963); *Carling v. Industrial Commission*, 16 Utah 2d 260, 399 P.2d 202 (1965); and *Mellen v. Industrial Commission*, 19 Utah 2d 373, 431 P.2d 798 (1967).

4. 92 Utah 438, 69 P.2d 268 (1937).

ally developed without the intervention of any "external occurrence"[5] or trauma. On the contrary, his present condition is the apparent result of a natural, progressive disability and hence is not compensable. As was stated in *Redman*, supra:

. . . To conclude otherwise would insure every truck driver, every railroad engineer, every airplane pilot, and a lot of others, against a physiological malfunction or physical collapse of any of hundreds of human organs, completely unproven as to cause, but compensable only by virtue of the happenstance that the malfunction, collapse or injury occurred while the employee was on the job, and not home or elsewhere.

It is also to be observed, that should the determination of the Commission be left to stand, its practical effect would be to severely limit the employment prospects of those in the work-force who have existing physical limitations. Employers would simply be apt to refuse employment to those so afflicted rather than run the risk of having to bear the cost of compensation for non-accident oriented disabilities that may occur. Particularly would this be so in the instant case, for in the medical panel's opinion, "If the applicant (defendant) persists in heavy lifting, his prognosis remains guarded."

The record before us does not support the Commission's conclusion that an accident arose out of or in the course of defendant's employment. Its order is therefore vacated and set aside and the matter is remanded with instruction to dismiss defendant's claim.

CROCKETT, C. J., and STEWART, J., concur.

WILKINS, Justice (dissenting):

I respectfully dissent.

The events in the months of May and June, 1975, constitute, I submit, an "accident" within Section 35–1–45, Utah Code Ann., 1953, as amended.

The only medical evidence before the Administrative Law Judge was the medical panel report and testimony of Dr. Wallace E. Hess, its chairman, which clearly and directly related Defendant Mason's disability of aggravation of a pre-existing spondylolysis to the episodes of lifting heavy objects in May and July, 1975. Hence, in my opinion, the Industrial Commission should be affirmed on its findings that the defendant is entitled to compensation. See my dissent in *The Church of Jesus Christ of Latter-Day Saints v. Industrial Commission of Utah & Thurman*, Utah, 590 P.2d 328, 330–32 (1979). However, consistent with *Intermountain Health Care, Inc. v. Ortega & the Industrial Commission*, Utah, 562 P.2d 617 (1977) and the consolidated cases of *The Paris Co. v. Christensen, Nebo School District v. Cargun*, and *White v. Pacific Employer's Insurance Co.*, Utah, 604 P.2d 478 (1979), this Court should remand to the Industrial Commission for apportionment of compensation benefits pursuant to Section 35–1–69, Utah Code Ann., 1953, as amended, were it to affirm the Commission's findings on entitlement to compensation.

MAUGHAN, J., concurs in the views expressed in the dissenting opinion of Justice WILKINS.