955 P.2d 15

**Jason GLODO, Petitioner,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**White Mountain KFC # 2, Respondent Employer,**

**State Compensation Fund, Respondent Carrier.**

No. 1 CA–IC 96–0089.

Court of Appeals of Arizona, Division 1, Department D.

Sept. 30, 1997.

Review Denied May 19, 1998.

---

260

Taylor & Associates, P.L.L.C. by Barbara J. Callaway and Roger A. Schwartz, Prescott, for Petitioner.

Anita R. Valainis, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for Respondent.

James F. Crane, Chief Counsel, State Compensation Fund by Mark Kendall, Phoenix, for Respondent Employer and Carrier.

## OPINION

LANKFORD, Judge.

This appeal asks us to decide whether an employee who injures his hand by punching a metal door due to a disagreement with his supervisor has sustained a compensable industrial injury. Because we conclude he has not, we affirm the award.

The evidence established that the claimant fractured a finger of his left hand at work at White Mountain KFC # 2 in Prescott Valley. The sole dispute between the parties concerned the manner in which the injury occurred.

It was undisputed by the parties that the claimant, a cook at KFC, was asked by the assistant store manager, Brad Bernard, to remain past his usual departure time to clean a buildup of grease on the floor. It was also undisputed that this task fell within the claimant's normal close of shift duties. The claimant testified that he sustained the injury to his left hand when he slipped and fell on a wet floor, striking his left hand on a freezer as he fell. However, according to the testimony of Bernard and the shift supervisor, Tracy Hollon, the claimant admitted to them that he had intentionally punched the freezer with his left hand out of anger at being asked to remain and clean the floor.

This presented a conflict in the evidence which the Administrative Law Judge ("ALJ") failed to resolve. *See Malinski v. Industrial Comm'n,* 103 Ariz. 213, 217, 439 P.2d 485, 489 (1968) (requiring the ALJ to resolve all conflicts in the evidence). Instead, the ALJ rejected all of the evidence presented by both of the parties. In his Decision Upon Review, the ALJ stated:

> The applicant's explanation of the occurrence of the industrial injury has been rejected whether it is punching the freezer or a slip and fall. Simply stated the applicant is not credible. There was no competent evidence that an injury occurred by accident arising out of and in the course of the employment. There are medical records to support an injury having occurred, however the undersigned does not know how and where and why it occurred. The injury could have occurred from punching the freezer. The injury could have occurred from a slip and fall. The injury may have occurred in some other manner. These are all equally possible explanations. In workers' compensation proceedings,

when evidence on both sides of a conflicting factual question is equally balanced in the mind of the trier of fact, the party with the burden of proof has failed.

The ALJ therefore denied the claim. This appeal then followed.

Although an Industrial Commission award will be sustained if it is reasonably supported by the evidence, it is equally true that it will be set aside if it is not supported by the evidence. *Goldstein v. Industrial Comm'n,* 22 Ariz.App. 319, 321, 526 P.2d 1274, 1276 (1974). *See Lewis v. Industrial Comm'n,* 2 Ariz.App. 522, 526, 410 P.2d 144, 148 (1966).

To decide this appeal we must resolve whether evidence of either cause of the claimant's injury would have justified an award. If neither would, then we must affirm the ALJ's decision.

We look first to the language of the relevant workers' compensation statute. A.R.S. section 23–1021(A) provides:

> Every employee coming within the provisions of this chapter who is injured, and the dependents of every such employee who is killed by accident arising out of and in the course of his employment, wherever the injury occurred, unless the injury was purposely self-inflicted, shall be entitled to receive and shall be paid such compensation for loss sustained on account of the injury or death, such medical, nurse and hospital services and medicines, and such amount of funeral expenses in the event of death, as provided in this chapter.

To be compensable under the statute the claimant's injury must be attributable to an "accident" that occurred during the course of employment [1] and not "purposely self-inflicted."

---

1. We reject the employer's argument that the claimant's injury did not arise out of and in the course of his employment. "Arising out of" refers to the origin or cause of the injury; "in the course of" refers to the time, place, and circumstances of the accident in relation to the employment. *Peter Kiewit Sons' Co. v. Industrial Comm'n,* 88 Ariz. 164, 168, 354 P.2d 28, 30 (1960); *Scheller v. Industrial Comm'n,* 134 Ariz. 418, 420, 656 P.2d 1279, 1281 (App.1982). There is no question that claimant's injury occurred in the course of his employment at KFC. All of the testimony established that the claimant

was asked to remain to properly complete his regular close of shift duties. The employer further maintains that there was no evidence establishing that the claimant's anger or frustration was work related. We disagree. Testimony at the hearing revealed that KFC's accident report stated: "Employee frustrated at being kept longer than expected and punched freezer." Further, Mr. Hollon testified that the claimant was angry about being required to stay at work later than usual to clean the floor area around the fryers and told him that he wanted to "kick

■ At the hearing, the claimant testified that he broke his hand when he slipped and fell on a wet spot on the floor and his hand inadvertently hit the freezer door. The ALJ clearly found the claimant's testimony not to be credible and rejected this cause for his broken hand. The ALJ is the sole judge of witness credibility, *Holding v. Industrial Comm'n*, 139 Ariz. 548, 551, 679 P.2d 571, 574 (1984), and on review, this Court will not substitute its judgment for that of the ALJ. *See, e.g., Perry v. Industrial Comm'n*, 112 Ariz. 397, 399, 542 P.2d 1096, 1098 (1975). We accept the ALJ's judgment and conclude that the injury did not occur as the result of an accidental fall.

We must next consider whether any other evidence would have supported an award. The only other evidence presented at the hearing to explain the claimant's injury was the employer's testimony that the claimant injured himself when he intentionally punched the freezer. The employer maintained that, because the injury was the result of the claimant's volitional punching of the metal door, the injury was "self-inflicted" and thus not compensable under the statute. The claimant argued that, even if one were to conclude that he intentionally punched the freezer, his injury was still the result of an "accident" and compensable. Claimant maintained that in order to be self-inflicted, A.R.S. section 23–1021(A) required that the injury itself be self-inflicted, not merely that the act causing the injury be intentional. Thus claimant argued that, while he. may have purposely punched the freezer door, he did not "purposefully" fracture his finger. According to this argument, the fracture was compensable as an unintended result.

■ We need not decide this question because we hold that claimant's intentional act was not an "accident" eligible for compensation, regardless of whether claimant intended the particular harm that resulted. *See* A.R.S. § 23–1021(A). An intentional act of violence that produces an injury that should be expected is not accidental. We find the rationale of *McKay Dee Hospital v. Industri-*

al *Comm'n of Utah*, 598 P.2d 375 (Utah 1979), a case with facts parallel to this one, to be persuasive.

In *McKay*, the claimant, angered as a result of a conversation with his supervisor about leave time, slammed his fists against two metal doors, breaking a bone in his right hand. The Utah workers' compensation statute—like A.R.S. section 23–1021(A)—provides compensation for workers injured by accident during the course of employment, provided that the injury was not purposely inflicted. 598 P.2d at 376. The Utah Industrial Commission awarded compensation.

The Utah Supreme Court reversed and denied compensation, holding as a matter of law that the event that caused the injury was not an "accident." *Id.* at 377.

It follows from the definition of "accident" that while the activity undertaken by the employee may be intentional, in order for the incident to fall within the confines of the term "accident," the result of the intentional activity must be unexpected or unforeseen. When a person slams his fist against a locked stationary metal door, it is foreseeable and expected injury will result to his hand. Therefore under the circumstances of this case, the harm which [sic] resulted from the intentional activity of [claimant] was not unusual, unexpected, or unforeseen, and the event cannot be classified an accident.

*Id.* The Utah Supreme Court based its conclusion in part on a Harvard Law Review article, which defined the nature of an "accident" as follows:

The test as [to] whether an injury is unexpected and so if received on a single occasion occurs "by accident" is that the sufferer did not intend or expect the injury would on that particular occasion result from what he was doing.

. . .

The element of unexpectedness inherent in the word "accident" is sufficiently supplied either if the incident itself is unusual, the act or condition encountered abnormal, or

Brad's ass." This evidence was sufficient to establish that the claimant's anger was work related and flowed from the supervisor's perception

that the claimant had inadequately performed his work.

if, though the act is usual and the conditions normal, it causes a harm unforeseen by him who suffers it.

*Id.* at n. 7 (*quoting* Francis Bohlen, *The Drafting of Workmen's Compensation Acts,* 25 Harvard L.Rev. 328, 340, 343 (1911–12)).

We agree with *McKay.* Furthermore, that decision is consistent with Arizona decisions that have interpreted the "by accident" requirement of the statute in cases involving volitional acts. Those cases suggest that when an "intentional" act is the cause, it is the "unusual" or "unexpected" result that justifies the classification of the injury as an "accident." *See Phelps Dodge Corp. v. Cabarga,* 79 Ariz. 148, 153, 285 P.2d 605, 608 (1955) (unexpected death as a result of ordinary work activities constitutes accident covered by statute); *In re Mitchell,* 61 Ariz. 436, 452–53, 150 P.2d 355, 361 (1944) (unexpected result—poisoning and resultant death—constitutes accident).

Applying the reasoning of *McKay,* we cannot say that claimant's broken hand—the result of claimant's deliberate punching of a metal door—was an "unexpected" or "unforeseen" result and thus an "accident." When one intentionally punches a metal door with the hand, the expected and anticipated result is injury to the hand.

We recognize that Larson deems the *McKay* case "a bad decision." 2 Arthur Larson, *The Law Of Workmen's Compensation* § 36.62, at 6–200 (1997). However, we found no decision agreeing with Larson that such injuries are compensable.

Moreover, Larson's analysis suffers from apparent confusion of that which is "intended" and that which is "expected." Thus, Larson maintains that "[t]o conclude that the claimant [in *McKay*] expected or intended to break his hand, and slammed the door with his fist anyway, is preposterous. There is no place in compensation law for this artificial and fictitious kind of 'intention.' " Larson, § 36.62 at 6–200.

The dispositive question in deciding whether something is an accident is whether the result is "unexpected" or "unforeseen," not whether the result was "unintended." Our cases do provide compensation for unexpected injuries that were the result of intentional acts. While neither the claimant in *McKay* nor the one in the present case may have intentionally set out to break his hand, it would be preposterous to say it was unanticipated that in punching a metal door, he could break his hand. If we were to adopt Larson's reliance on intent alone, compensation could be denied only when a claimant freely admitted to having intentionally punched a metal door *in order to* break his hand to spite his employer.

Larson's pronouncement that "there is no place in compensation law" for drawing such distinctions is simply wrong. Important social policy considerations support distinguishing the conduct in this case from compensable conduct under the statute. It would be patently unwise to reward individuals who engage in this type of self-injurious conduct. Furthermore, our legislature has indicated its desire that we draw such distinctions by specifically limiting compensable claims under A.R.S. section 23–1021(A) to those occurring "by accident."

Because none of the evidence presented supported a finding that the claimant suffered a compensable claim, the ALJ did not err in finding the claim non-compensable.

Claimant raises two additional arguments that we address. First, claimant argues that an injury resulting from an intentional act is presumed to be "unintentional" and thus compensable. Therefore, claimant argues, because the employer did not introduce evidence to rebut his testimony that he did not intend to break his finger, his injury was unintended and compensable.

The claimant relies on *Mandex, Inc. v. Industrial Comm'n,* 151 Ariz. 567, 729 P.2d 921 (App.1986), but that decision is inapposite. In *Mandex,* the claimant, an office manager who suffered from a pre-existing condition that prevented her from typing, was forced by workplace pressures to perform typing for her employer, thereby reinjuring herself. The employer argued that, because the claimant "consciously" performed the typing despite her doctor's admonitions against doing so, her injury was "pur-

posely self-inflicted" and not compensable. *Id.* at 571, 729 P.2d at 922.

This Court found that the claimant's injury was the result of an accident. Testimony showed that the claimant had not expected to have to type as part of her duties, and had in fact removed the typewriter from her desk, only to have her employer replace it with another in her workspace.

We found the cause of claimant's injury was an "accident" because it was "certainly *unexpected* that workplace pressures would require her to perform sustained typing." *Id.* (emphasis added). Moreover, claimant's attempts to avoid typing, as well as the employer's coercive measure of replacing her typewriter, led this Court to find ample evidence which negated the employer's contention that the claimant's injury had been self-inflicted. *Id.* We rejected the argument that claimant's injury was purposely self-inflicted as being "untenable in face of the record."

■ That cannot be said in the present case, in which the injury was to be expected as a direct result of claimant's action. Furthermore, to the extent this Court recognized a "presumption that a claimant does not intend to injure himself or herself" in *Mandex*, that is a rebuttable presumption. In this case, the presumption is rebutted by the fact that the claimant in this case voluntarily engaged in an action that predictably and indeed almost inevitably results in injury.

■ The claimant also argues that this case should be decided in accord with cases involving work-related assaults. These decisions hold that when a claimant receives injuries as a result of a work-related disagreement, it is immaterial who was the aggressor, and the injuries typically are held to arise out of and in the course of employment. *See, e.g., Colvert v. Industrial Comm'n,* 21 Ariz.App. 409, 520 P.2d 322 (1974);[2] *see also* 1 Arthur Larson, *The Law of Workmen's*

*Compensation* § 11.12(b), at 3–212 to 3–221 (1996) (it is universally agreed that if the assault grew out of an argument over the performance of work, the assault is compensable). The claimant argues that it is a distinction without a difference that he struck an inanimate object out of his work-related frustration, rather than striking a co-worker. We disagree.

When a claimant assaults a co-worker, the outcome is not nearly as predictable as when the claimant slams his fist into a metal freezer door. When a punch is directed at a fellow worker, the co-worker could evade the blow or run away without any injuries. The claimant might trounce the co-worker and suffer no injuries himself. He could land a punch and break his hand on the co-worker's nose, or the co-worker could trounce claimant and break the claimant's nose. The outcome is inherently uncertain. In contrast, when someone forcefully punches a metal door there is a highly probable result: The hand is injured.

For the reasons stated above, the claimant has not sustained a compensable industrial injury. The ALJ's award is therefore affirmed.

THOMPSON, P.J., and GARBARINO, J., concur.

---

**2.** In *Colvert,* the claimant was unloading a truck of insulation by tossing bales to co-workers on the ground, when he threw a bale and struck a co-worker in the back. After an angry exchange, the claimant kicked the co-worker in the face and then fell off the truck, breaking his arm. This Court set aside the award and held the claim compensable. Even *Colvert* is distinguishable from the facts of this case in that the injury in *Colvert* did not occur as a result of the physical altercation with the co-worker, but because the claimant inadvertently slipped and fell off the truck on which he was standing.