2008 OK CIV APP 83

## COX COMMUNICATIONS and AIG Insurance Company, Petitioner,

v.

## Ted WILLIAMSON, and The Workers' Compensation Court, Respondents.

### No. 105,198.

Court of Civil Appeals of Oklahoma, Division No. 1.

May 2, 2008.

Rehearing Denied May 30, 2008.

Certiorari Denied Sept. 15, 2008.

---

Todd Estes, Andrea D.W. Moates, Robert P. Powell, Pierce Couch Hendrickson Baysinger & Green, L.L.P., Oklahoma City, OK, for Petitioners.

Ronald E. Doyle, Darrel R. Paul, Tulsa, OK, for Respondents.

CAROL M. HANSEN, Judge.

¶1 Petitioners, Cox Communications and AIG Insurance Co. (collectively Employer), seek our review of a Workers' Compensation Court (WCC) order which [a] found Respondent, Ted Williamson (Claimant), sustained compensable injuries and [b] denied Employer's affirmative defenses that Claimant willfully intended to injure himself and willfully failed to utilize safety equipment and policies. We hold the WCC's order is supported by competent evidence and sustain.

¶2 Claimant, while on a service call to one of Employer's customers, was injured when he fell from a ladder while attempting to repair equipment belonging to Employer. Claimant suspected the problem was in Employer's line extending from atop a utility pole. To reach the line, he used a 28 foot extension ladder which had "hooks" at the

top to place over a "strand" running from pole to pole. There was no one else present, and Claimant was unsure exactly what caused his fall, it appears the fall occurred when the ladder slipped along the strand and ejected Claimant.

¶ 3 Claimant acknowledged he had been trained to use Employer's strands, but testified that on this occasion he decided to use an adjacent Southwestern Bell strand because "the ground was unlevel up near the pole and closer to the pole and as high up as our cable was, I felt that was the safest place to put it." Claimant also acknowledged he was not wearing his standard safety equipment, which consisted of a safety belt, helmet and a safety loop used to secure a ladder's hooks to a strand and back to the belt. In explanation, Claimant testified he had the safety equipment on when the ascended the ladder the first time, but took it off when he had to "crawl" into his van to retrieve a part and "[d]idn't even think about it" when going back to finish the job. He also said he fell while trying to ascend the ladder a second time after he retrieved the part.

¶ 4 Employer unsuccessfully asserted before the trial court, and on appeal to a three-judge panel of the WCC, that Claimant's injuries did not arise out of and in the course of his employment, which are requisite findings to support a compensation award. 85 O.S.2001 § 11(A). Employer, citing 85 O.S. 2001 §§ 11(A)(1) and (2),[1] argued as affirmative defenses that Claimant willfully intended to injure himself and willfully failed to utilize safety equipment and policies.

¶ 5 The trial court's order, affirmed unanimously by the three-judge panel, found:

THAT the claimant connected his ladder to the Southwestern Bell strand rather than the Cox strand which may have been poor judgment, but did not constitute "willful failure". The claimant fell from a ladder prior to reaching a position where he could use his safety belt. Respondent's defense of willful failure to use a guard or protection is overruled. Respondent's defense of willful intention of claimant to injure himself is overruled. There was no evidence claimant intended to harm himself.

■■■ ¶ 6 Employer reiterates its assertions made in the WCC for our review. The willfulness question raised by Employer is one of fact for determination by the WCC. *Ashley v. Monsanto*, 2000 OK CIV APP 43, 4 P.3d 48, citing *Wise–Buchanan Coal Co. v. Ray*, 1932 OK 424, 157 Okla. 197, 17 P.2d 360. As a question of fact, it must be reviewed by applying the traditional any-competent-evidence test of correctness. *Parks v. Norman Municipal Hospital*, 1984 OK 53, 684 P.2d 548. Under this standard, our responsibility simply is to canvass the facts, not with an object of weighing conflicting proof in order to determine where the preponderance lies, but only for the purpose of ascertaining whether the WCC's decision is supported by competent evidence. *Id.*, at 552. Only where there is no conflict in the evidence, and no opposite inferences may be drawn from undisputed proof, is it proper to treat such matters as questions of law. *Lanman v. Oklahoma County Sheriff's Office*, 1998 OK 37, 958 P.2d 795.

¶ 7 In an early determination of the meaning of "willfulness" as used in § 11(A)(2), which in its present form is in almost identical language as when originally enacted,[2] the Oklahoma Supreme Court stated:

The willfulness contemplated amounts to more than a mere act of the will, and carries with it the idea of premeditation, obstinacy, and intentional wrongdoing. The burden is upon the employer to show that the failure of the claimant comes within the exception defined by statute....

*Wick v. Gunn*, 1917 OK 607, 66 Okla. 316, 169 P. 1087.

---

1. Provides that employers shall pay compensation for disabling injuries to employees where the injuries arise out of and in the course of employment, except, *inter alia:*

1. An injury occasioned by the willful intention of the injured employee to bring about injury to himself or herself, or another;

2. An injury resulting directly from the willful failure of the injured employee to use a guard or protection against accident furnished for use pursuant to any statute or by order of the Commissioner of Labor.

....

2. Session Laws 1915, Ch. 246, p. 577.

¶ 8 The *Wick* Court's definition of willfulness is also instructive in considering willful intent of an injured employee to "bring about injury to himself" as contemplated in § 11(A)(1). Review of this jurisdiction's appellate jurisprudence reveals our courts have set an equally high standard for cases involving willful injury. Employer cites two opinions in support of its contention, and then attempts to distinguish essentially all remaining cases dealing with the issue. However, we find Employer's cited authorities are the ones distinguishable from the present case.

¶ 9 In Employer's first cited case, *Washington v. Anderson Wholesale*, 2000 OK CIV APP 15, 996 P.2d 497, there was evidence the injured employee intentionally, out of anger, struck a glass door with her hands, resulting in cuts to the hands. In the second, *Thomas v. Sundowner*, 2000 OK CIV APP 111, 13 P.3d 92, there was evidence the employee provoked a fight with a co-worker and was injured.[3] In both cases, injuries were not only readily foreseeable by the employee, but almost inevitable. Evidence the employees took their actions with the knowledge that injury was likely supports a finding of willfulness.

¶ 10 Here, to the contrary, Claimant's testimony was that after reviewing the alternative ways to facilitate performing his job, he set up the ladder in the manner he considered to be the safest. While, as the WCC found, his judgment may have been questionable, his decision does not in any way evince an intent to "bring about injury to himself." It is important to note here that contributory negligence and assumption of risk are not available to employers or insurers as defenses to WCC claims. *Crutchfield v. Bogle*, 1954 OK 147, 270 P.2d 640.

¶ 11 Although Employer presented evidence Claimant violated its safety procedures and acted in what it considered to be an inherently unsafe way, that created a factual controversy which is the province of the WCC, not ours. It is the WCC's duty to weigh the evidence, determine credibility of witnesses, and draw reasonable conclusions from their testimony. *Hackley v. Dalles*

*Nursing Home*, 1962 OK 140, 372 P.2d 586. The WCC can refuse to give credence to any portion of the testimony deemed unworthy of belief and can rely in part on Claimant's evidence and in part on Employer's evidence, or accept part of one witness's testimony while rejecting other parts. *TRW/Reda Pump v. Brewington*, 1992 OK 31, 829 P.2d 15. The WCC heard the evidence in this case and decided, notwithstanding Claimant's undisputed failure to act in the most prudent manner, it believed Claimant's testimony he had no intention to cause injury to himself. There is competent evidence to support that determination.

¶ 12 There is also conflicting evidence regarding Claimant's failure to use, in the words of § 11(A)(2), "a guard or protection against accident furnished for use pursuant to any statute or by order of the Commissioner of Labor." As to the personal safety gear, *i.e.*, safety belt, helmet and safety loop, the WCC found Claimant fell from the ladder prior to reaching a position where he could use his safety belt. We agree the failure to have on the safety gear did not directly cause Claimant's injuries, as required by § 11(A)(2). There is evidence that at the place on the ladder from which Claimant fell, he could not have utilized the safety loop to secure himself to the strand. He would have had to climb higher.

¶ 13 The other "guard[s] or protection against accident" at issue were failure to use Employer's own strand to hook the ladder over and failure to use the "spikes" at the bottom of the ladder's feet. The difference in Employer's strand and Southwestern Bell's was the presence of "bug nuts" on Employer's, which Employer argues would have kept the ladder from slipping. It is unclear whether the bug nuts or the ladder spikes were "furnished for use pursuant to any statute or by order of the Commissioner of Labor" so as to bring them under § 11(A)(2). In fact, the only evidence in that respect was testimony that Employer's "safety equipment" met or exceeded "OSHA requirements" without reference to the actual statute or regulation mandating the equipment.

---

3. Claimant also correctly notes this is, in fact, a § 11(A)(4) case, not § 11(A)(1).

¶ 14 However, presuming the safety equipment was so mandated, under the conflicting facts of record we do not find Claimant's failure to use that equipment to be the result of premeditation, obstinacy or intentional wrongdoing. Claimant testified he set up the ladder in the manner he considered safest in view of the uneven terrain, location of the equipment he was trying to replace, and other attendant circumstances. The mere voluntary and intentional failure of a workman to use safety appliances does not necessarily render the omission willful. *Wick v. Gunn*, 1917 OK 607, 66 Okla. 316, 169 P. 1087 (Syllabus of the Court.) At the worst, there is evidence Claimant acted out of forgetfulness, inattention and bad judgment. That will not support an affirmative defense pursuant to § 11(A)(2).

¶ 15 Employer failed in its burden to establish the degree of willfulness demanded under our law to obviate its liability in accordance with either § 11(A)(1) or (2), *Wick*, at Syllabus. The WCC's order finding Claimant sustained accidental injuries arising out of and in the course of employment with Employer is SUSTAINED.

ADAMS, P.J., and JOPLIN, J., concur.